UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
ASHLEY CLARK,

         Plaintiff,　　　　　　　　　　　　**COMPLAINT**　 1:22-cv-574 (GTS/CFH)

-against-

                                                **JURY TRIAL DEMANDED**

REHABILITATION SUPPORT SERVICES, INC.,
FRED BUCKLEY, in his individual capacity, and
SEAMUS MCNULTY, in his individual capacity,

         Defendants.
------------------------------------------------------------------x

      Plaintiff, Ashley Clark ("Plaintiff") through her counsel, SLATER SLATER SCHULMAN LLP hereby submits this Complaint and complains of the Defendants, upon information and belief, as follows:

### NATURE OF CASE

1. Plaintiff complains pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub. L. No. 102-166 ("Title VII"), and the New York State Human Rights Law, and seeks damages to redress the injuries Plaintiff suffered as a result of being exposed to sexual discrimination, sexual harassment, hostile work environment, retaliation, and constructive discharge/wrongful termination.

2. Jurisdiction of this action is conferred upon this Court as this action involves a federal question under Title VII of the Civil Rights Act. The Court also has supplemental jurisdiction over the State causes of action.

3. Venue is proper in this District base upon Defendants' place of business being subject to personal jurisdiction within Albany County, State of New York, within the Northern District of New York. 28 U.S.C. §1391(b).

4. On or around January 20, 2022, Plaintiff filed a complaint with the EEOC against Defendant employer as set forth herein.

5. On or about May 5, 2022, Plaintiff received a Right to Sue Letter from the EEOC.

6. Plaintiff satisfied all administrative prerequisites and is filing this case within ninety (90) days of receiving the Right to Sue Letter.

## PARTIES

7. Plaintiff is a single female who resides in Schenectady, New York.

8. Defendant Rehabilitation Support Services, Inc. (Hereinafter "Defendant" and "Defendants" and "RSS") was and is a duly authorized domestic corporation doing business in the State of New York.

9. Upon information and belief, Defendant RSS solicits business within the State of New York.

10. Upon information and belief, Defendant RSS derives substantial revenues from goods used or consumed or services rendered in the State of New York.

11. Defendant is also an "employer" within the meaning of the New York Human Rights Law.

12. Defendant Fred Buckley (Hereinafter "Defendant," "Defendants," and "Buckley") was and is a supervisor for Defendant RSS.

13. Upon information and belief Defendant Buckley has hire and fire authority over Defendant RSS personnel.

14. At all times material, Defendant Buckley had supervisory authority over Plaintiff.

15. Defendant Seamus McNulty (Hereinafter "Defendant," "Defendants," and "McNulty") was and is a supervisor at Defendant employer.

16. At all relevant times, Defendant McNulty was Defendant employer's Regional Director.

17. Upon information and belief Defendant McNulty has hire and fire authority of Defendant RSS' personnel.

18. At all times material, Defendant McNulty had supervisory authority over Plaintiff.

19. Defendants are also "employers" within the meaning of the New York State Human Rights Law.

20. Plaintiff is also an "employee" within the meaning of the New York State Human Rights Law.

## FACTS

21. At all times relevant Ms. Clark ("Plaintiff") resides in Schenectady County and is an individual female.

22. That at all times herein mentioned, Defendant Rehabilitation Support Services, Inc. ("RSS") was and still is a domestic business corporation organized and existing by virtue of the laws of the State of New York.

23. Defendant employer hired Plaintiff in or around April 2017 as a Maintenance Worker.

24. As Defendant's Maintenance Worker, Plaintiff cleaned, landscaped, and maintained New York State and RSS properties and buildings.

25. Defendant provided Plaintiff with sexual harassment training at the time of hire.

26. Defendant provided Plaintiff with an employee handbook.

27. From April 2017 until around January 2019, Plaintiff worked without issue.

28. In or around January 2019, Defendant's Supervisor Fred Buckley ("Buckley") became Plaintiff's daily supervisor.

29. In or around January 2019, Defendant's Supervisor Buckley started to sexually harass Plaintiff on a daily basis.

30. About four times during every shift, Defendant's Supervisor Buckley made sexual comments to Plaintiff such as "**Come here, sweet cheeks**," "**Let me grab your ass**," and "**I want to kiss you**."

31. On a daily basis, Defendant's Supervisor Buckley asked Plaintiff to have sex with him in the back supply closet.

32. Defendant's Supervisor Buckley's comments made Plaintiff feel uncomfortable and awkward.

33. Plaintiff denied all of Defendant's Supervisor Buckley's propositions.

34. When Plaintiff denied Defendant's Supervisor Buckley's propositions, Defendant's Supervisor Buckley would say, "I guess you don't want extra hours" and "I guess you don't want that landscaping position."

35. Defendant's Supervisor Buckley's threats to cut Plaintiff's hours made Plaintiff feel anxious and embarrassed.

36. Defendant's Supervisor Buckley never treated male staff in this manner.

37. The harassment did not stop.

38. Defendant's Supervisor Buckley also inappropriately touched Plaintiff about four times a week without her consent.

39. On multiple occasions, Defendant's Supervisor Buckley grabbed Plaintiff's buttocks.

40. Plaintiff immediately told Defendant's Supervisor Buckley to stop touching her.

41. As such, Defendant had knowledge of the sexual harassment.

42. Despite Plaintiff's complaints, Defendant's Supervisor Buckley continued to inappropriately touch Plaintiff.

43. Defendant's Supervisor Buckley attempted to kiss Plaintiff about four times.

44. Plaintiff immediately told Defendant's Supervisor Buckley to stop touching her.

45. Defendant's Supervisor Buckley's inappropriate touching made Plaintiff feel violated and unsafe.

46. Defendant's Supervisor Buckley never treated male staff in this manner.

47. In or around late July 2021, the harassment became so unbearable Plaintiff was forced to resign.

48. Plaintiff returned to work for Defendant in or around August 2021 after she could not find another job.

49. When Plaintiff returned to Defendant employer in August 2021, she made a verbal complaint over the phone to Defendant's Regional Director, Seamus McNulty ("McNulty"), who supervised Defendant's Supervisor Buckley.

50. Plaintiff complained of Defendant's Supervisor Buckley' sexual harassment, including the consistent physical touching and sexual comments.

51. As such, Defendant had knowledge about the sexual harassment and hostile work environment Plaintiff was enduring.

52. In response to Plaintiff's report of sexual harassment, Defendant's Regional Director McNulty told Plaintiff, "I don't want to hear it, Fred is your boss, and I don't want to hear it."

53. Defendant took no action to remedy the situation.

54. As such, the harassment continued.

55. In or around August 2021, Defendant's Supervisor Buckley asked Plaintiff if "things would be the same as before," meaning his consistent touching of and comments toward Plaintiff.

56. Plaintiff told Defendant's Supervisor Buckley that she will continue to reject his advances and will continue to complain about the sexual harassment.

57. Defendant's Supervisor Buckley ignored Plaintiff's rejection and on a daily basis asked Plaintiff to have sex with him.

58. Defendant's Supervisor Buckley's persistence and inappropriateness made Plaintiff feel uncomfortable, unsafe, and awkward.

59. Defendant's Supervisor Buckley continued to harass Plaintiff, creating a hostile work environment.

60. Defendant's Supervisor tried to isolate Plaintiff so he could be alone with her, furthering the hostile work environment.

61. From May 2021 until September 2021, Defendant's Supervisor Buckley told Plaintiff to report to work two hours late, when no other employees would be present, but him.

62. Plaintiff ignored Defendant's Supervisor Buckley's orders because she feared to be alone with him.

63. Defendant's Supervisor Buckley never treated male staff in this manner.

64. In or around June 2021, Plaintiff waited outside of her workplace for about one hour before entering.

65. Plaintiff waited for other employees to be present because she feared being alone with Defendant's Supervisor Buckley.

66. Defendant's Supervisor Buckley's sexual harassment created an extremely uncomfortable and hostile work environment for Plaintiff.

67. In or around early September 2021, Plaintiff made another complaint.

68. Plaintiff complained to Defendant's Supervisor Mary (Last Name Unknown) ("Mary") and Defendant's Regional Director McNulty.

69. Again, Plaintiff reported Defendant's Supervisor Buckley's harassing behavior, including the consistent inappropriate physical touching and sexual comments.

70. As such, Defendant had knowledge of the sexual harassment and hostile work environment.

71. Despite the complaint, Defendants took no action to alleviate the harassment or hostility.

72. Rather than remedying the situation, Defendant retaliated against Plaintiff.

73. Plaintiff relies on public transportation.

74. In or around February 2021 to June 2021, Defendant provided transportation for Plaintiff to a temporary assignment in Albany, New York.

75. As such, Defendant was aware of Plaintiff's reliance upon public transportation.

76. About one week after Plaintiff's second complaint of sexual harassment to Defendant's agents, Defendant's Supervisor Buckley and Defendant's Supervisor Mary transferred Plaintiff from the main location she had worked at for almost three years.

77. The location Plaintiff was assigned to for almost three years was located less than one mile from her home, allowing her to walk to work.

78. However, after Plaintiff complained, Defendant transferred Plaintiff to the RSS Saratoga truck stop location.

79. The RSS Saratoga truck stop location is not accessible by public transportation and is thirty miles north of Plaintiff's home.

80. Thus, Defendants forced Plaintiff to decline the Saratoga job assignment and constructively discharged her, as it was impossible for her to travel to that location.

81. Rather than providing transportation or allowing Plaintiff to work locally, Defendants "improperly discharged" Plaintiff in or around late September 2021 after she made a complaint of sexual harassment.

82. As a result of Defendants' actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed and emotionally distressed.

83. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income the loss of salary, bonuses, benefits and other compensation which such employment entails, and Plaintiff also suffered future pecuniary losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

84. Plaintiff has further experienced severe emotional and physical distress.

85. Upon information and belief, the discrimination will continue after the date of this complaint and Plaintiff hereby makes a claim for all continuing future harassment.

86. As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages against the Defendants.

87. Plaintiff claims a continuous practice of discrimination and claims a continuing violation and makes all claims herein under the continuing violations doctrine.

88. The above are just some examples, of some of the discrimination to which Defendants subjected Plaintiff.

89. Defendants exhibited a pattern and practice of discrimination.

## AS AND FOR THE FIRST CAUSE OF ACTION
*(Not Against Any Individual Defendants)*

90. Plaintiff repeat and reallege each and every allegation in the preceding paragraphs with the same force and effect as if fully set forth herein.

91. Plaintiff were employees within the meaning of Title VII of the Civil Rights Act, 42. U.S.C. § 2000e(f).

92. At all relevant times, Defendant RSS employed in excess of fifteen (15) employees and was an employer within the meaning of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e(b).

93. Pursuant to Title VII, 42 U.S.C. § 2000e-2(a) it is unlawful for an employer to discharge an employee because of such employee's "gender/sex".

94. Plaintiff's rights under Title VII were violated by acts of the Defendant in which Plaintiff was terminated based upon her sex/gender.

95. The motivating factor for Plaintiff's termination/constructive discharge was Plaintiff's gender/sex.

96. Defendant created and maintained a hostile work environment based on sex and sexual harassment.

97. But for Plaintiff' sex, Plaintiff would not have been constructively discharged/terminated.

98. Defendant's unlawful acts were intentional, willful, malicious and in reckless disregard of Plaintiff' rights.

99. As a result of Defendant's unlawful acts, Plaintiff suffered and continues to suffer damages, in forms including, but not limited to, lost income, lost future earnings and severe emotional distress, mental anguish, pain and suffering.

## AS A SECOND CAUSE OF ACTION
## FOR DISCRIMINATION UNDER TITLE VII
*(not against any individual Defendants)*

100.   Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

101.   Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-3(a) provides that it shall be unlawful employment practice for an employer:

"(1) to . . . discriminate against any of his employees . . . because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

102.   Defendant engaged in unlawful employment practice prohibited by 42 U.S.C. §2000e et seq. by retaliating against Plaintiff with respect to the terms, conditions or privileges of employment because of her opposition to the unlawful employment practices of Defendant.

## AS A THIRD CAUSE OF ACTION
## FOR DISCRIMINATION UNDER NEW YORK STATE LAW

103.   Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

104.   New York State Executive Law §296(6) provides that it shall be an unlawful discriminatory practice:

"For any person to aid, abet, incite compel or coerce the doing of any acts forbidden under this article, or attempt to do so."

105. Defendants engaged in an unlawful discriminatory practice in violation of New York State Executive Law §296(6) by aiding and abetting, inciting, compelling and coercing the discriminatory conduct.

## AS A FOURTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER NEW YORK STATE LAW

106. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

107. New York State Executive Law §296(7) provides that it shall be an unlawful discriminatory practice:

"For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because [s]he has opposed any practices forbidden under this article."

108. Defendants engaged in an unlawful discriminatory practice by wrongfully retaliating against Plaintiff.

## AS A FIFTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER NEW YORK STATE LAW

109. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

110. Executive Law § 296 provides that

"1. It shall be an unlawful discriminatory practice: "(a) For an employer or licensing agency, because of the age, race, creed, color, national origin, sex, or disability, or marital status of any individual, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

111.  Defendants engaged in an unlawful discriminatory practice by discriminating against the Plaintiff through gender/sex/sexual discrimination, hostile work environment based on sex, sexual harassment, and constructive discharge/wrongful discharge.

112.  Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of Executive Law Section 296.

## JURY DEMAND

The Plaintiff demands that the foregoing causes of action be tried before a jury.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiff, demands judgment against Defendants in an amount to be determined at trial plus interest, including, but not limited to, all emotional distress, back pay and front pay, punitive damages, statutory damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

Dated: May 31, 2022
      Melville, NY 11747

                                SLATER SLATER SCHULMAN LLP

                                John C. Luke, Jr.
                                445 Broad Hollow Road, Suite 419
                                Melville, NY 11747
                                *Attorneys for Plaintiff*

**DEMAND TO PRESERVE EVIDENCE**

Defendants are hereby directed to preserve all physical and electronic information pertaining in any way to Plaintiff's employment, cause of action and/or prayers for relief, and to any defenses to same, including, but not limited to, electronic data storage, closed circuit TV footage, digital images, computer images, cache memory, searchable data, computer databases, emails, spread sheets, employment files, memos, text messages, any and all online social or work related websites, entries on social networking sites (including, but not limited to, Facebook, Twitter, MySpace, etc.), and any other information and/or data and/or things and/or documents which may be relevant to any claim or defense in this litigation.